## HADDOX, Warden, v. RICHARDSON.

### (Circuit Court of Appeals, Fourth Circuit. March 13, 1909.)

### No. 813.

1. CRIMINAL LAW (§ 1218*)—PUNISHMENT—TERM OF IMPRISONMENT—IMPRISON-MENT FOR FINE—PLACE—"JAIL."

Revised St. §§ 1042, 5296 (U. S. Comp. St. 1901, pp. 724, 3608), provide that when a poor convict, sentenced to imprisonment, or to pay a fine, or a fine and costs, has been confined in prison 30 days solely for the non-payment of such fine, or fine and costs, such convict may apply to take a poor debtor's oath, on which he shall be discharged, and the commissioner shall give to the keeper of the "jail" a certificate setting forth the facts. *Held*, that the word "jail" did not imply that no prisoner should be held in a penitentiary for nonpayment of a fine or a fine and costs, but was used merely to indicate the place of confinement, and hence a federal prisoner could be properly retained in the same institution where he had served his term of imprisonment for the nonpayment of a fine, or a fine and costs, assessed as a part of the sentence, until the fine was paid, or the prisoner applied to take the poor debtor's oath after the expiration of 30 days from the completion of his term.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1218.*

For other definitions, see Words and Phrases, vol. 4, pp. 3801–3802; vol. 8, p. 7694.]

2. HABEAS CORPUS (§ 117*)—IMPRISONMENT—TERM—SERVICE—DISCHARGE ON HABEAS CORPUS—RECAPTION.

Where a prisoner in the penitentiary, after having served the imprisonment part of the sentence, was erroneously discharged on habeas corpus because it was supposed that his incarceration could not be continued for nonpayment of the fine assessed, the United States, on reversal of such order, could retake and return him to the penitentiary from which he had been released, and hold him therein until he had been lawfully discharged by payment of the fine, or by taking the poor debtor's oath after 30 days' additional imprisonment, as authorized by Rev. St. §§ 1042, 5296 (U. S. Comp. St. 1901, pp. 724, 3608).

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 117.*]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Clarksburg.

Reese Blizzard, U. S. Atty., and William R. Harr, for appellant.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge. This case presents the question whether a person convicted in a court of the United States and sentenced to imprisonment in a penitentiary at labor and to pay a fine can, after the expiration of the term of imprisonment, and failure to pay the fine because of inability, be detained in the penitentiary under the provisions of sections 1042 and 5296 of the Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 724, 3608). The appellee, Frank S. Richardson (with another) was indicted and convicted in the Supreme Court of the District of Columbia for conspiracy under section 5440, Rev. St. (U. S. Comp. St. 1901, p. 3676). Richardson

was sentenced to imprisonment at labor for two years in a penitentiary to be designated by the Attorney General of the United States, and to pay a fine of $10,000, and, in default of payment of the fine, to stand further committed until paid. The penitentiary of the state of West Virginia at Moundsville, in said state, was designated by the Attorney General for the execution of the sentence. Richardson was delivered to the penitentiary authorities on the 17th day of February, 1906, on which date his term of imprisonment began, and he continued in the said penitentiary undergoing the sentence until the 25th day of September, 1907, on which last-named date the term expired (credit being extended to the prisoner under the statute for good behavior). Richardson was still detained in the penitentiary after the 25th day of September, 1907, until October 3, 1907, when he filed his petition before the Honorable Alston G. Dayton, District Judge of the United States for the Northern district of West Virginia, sitting in Circuit Court of the United States for the said district in term at Clarksburg, in said state, for habeas corpus. The petition alleged that Richardson, the petitioner, was imprisoned and unlawfully restrained of his liberty by Charles E. Haddox, warden of the West Virginia penitentiary. The alleged illegality of the imprisonment is particularly set forth in the petition as follows:

"That your petitioner is now, and ever since September 25, 1907, has been, held in custody by the said warden in the said penitentiary solely for default of payment of said fine; that the said fine is the maximum prescribed by the said section 5440; that the said term of imprisonment which your petitioner has fully suffered is the maximum prescribed by the said law; that your petitioner is utterly unable to pay the fine in whole or in part, and has no prospects of ever being able to do so; that his suffering of the said maximum term of imprisonment is a bar to the collection of said fine, even if your petitioner were able to pay it; that the said court had no jurisdiction whatever to sentence your petitioner to be further confined in the said penitentiary or any penitentiary, either with or without labor, merely for default in the payment of said fine; that there is not now and never has been any law whatever authorizing the said court or any federal court to sentence any person to the penitentiary except for the sole purpose of serving the term of imprisonment as such prescribed by the statute in question, but never merely for default in payment of a fine imposed, and the said term of imprisonment as such must be for a term longer than one year (unless the statute requires hard labor), and not otherwise; that the said sentence that your petitioner stand committed at labor in the said penitentiary further than the said maximum term of two years for default in payment of said fine is null and void, because it is in violation and excess of the laws of the United States, and subjects your petitioner to an infamous punishment at hard labor for the mere nonpayment of a fine; that the said section 5440 is silent as to labor, but nevertheless the said court, without authority, sentenced your petitioner to be 'kept at labor' in said penitentiary for the whole of the said maximum term of two years, and further until the said fine be paid, and your petitioner has in fact been subjected to and kept at hard labor therein for the said term, and ever since the said September 25, 1907, your petitioner has been and still is subject to and kept at hard labor in the said penitentiary solely for default in payment of said fine; that the said sentence that your petitioner stand further committed at labor in the said penitentiary until the said fine be paid is also null and void for indefiniteness, in that the term of such commitment is unlimited, but is in effect for the term of his natural life, because there is no law under which he can be discharged from the penitentiary on account of his inability to pay the said fine by reason of his poverty, the law relating to such charges being restricted exclusively to the cases of imprisonment in jails, and not extending to cases of imprisonment in a penitentiary, for the

reason that imprisonment in a penitentiary, either with or without labor, for the mere nonpayment of a fine, is wholly unauthorized by the law of the United States."

The writ was issued as prayed for by Richardson in his petition, and served upon the appellant, Charles E. Haddox, warden of the West Virginia penitentiary. Haddox made return and answer to the writ as follows:

"Comes now the respondent, Charles E. Haddox, warden of the West Virginia penitentiary, and, submitting to the jurisdiction of this court in the premises, for answer to the petition of Frank S. Richardson in the cause filed, certifies and says that the true cause of the respondent's detention of the petitioner is the original paper writing, a correct copy of which is set out in the ninth paragraph of the said petition, and that under the said paper writing the respondent now detains the petitioner solely for his default in payment of the fine imposed upon him by the sentence of the Supreme Court of the District of Columbia, which sentence is recited in the said paper writing, and the several facts, matters, and things in this cause presented, the respondent hereby respectfully submits to the judgment of this court.

　　　　　　　　　　　　"C. E. Haddox,
　　　　"Warden of the West Virginia Penitentiary.

"Subscribed and sworn to before me this 1st day of October, 1907.
"[Notary's Seal.]　　　　　　　　　　　C. G. Dawson,
　　　　　　　　　　　　　　　　　　　"Notary Public."

On the 7th day of October, 1907, upon a hearing of the matter, the court entered the following order:

"This 7th day of October, 1907, came again the petitioner, Frank S. Richardson, by his counsel, Charles McCamic and respondent, Charles E. Haddox, warden of the penitentiary of the state of West Virginia, by E. M. Showalter, Assistant United States District Attorney for the Northern district of West Virginia, and the court proceeds to a hearing of the matters and things involved in this proceeding; and it appearing to the court that the petitioner is now restrained of his liberty and is at present confined in the penitentiary of the state of West Virginia by the said Charles E. Haddox, warden of said institution, solely for the nonpayment of a fine imposed, and the court being of opinion that it is illegal to confine in the penitentiary solely for the nonpayment of a fine, and that the said petitioner, Frank S. Richardson, is illegally restrained of his liberty, it is therefore considered by the court that the said Charles E. Haddox, warden of the West Virginia penitentiary aforesaid, on service upon him of a certified copy of this order, do immediately release the said petitioner, Frank S. Richardson, from confinement in the said West Virginia penitentiary; and, nothing further remaining to be done, this proceeding is ordered to be dropped from the docket.

"Oct. 7th, 1907.　　　　　　　　　　Alston G. Dayton, Judge."

Richardson was thereupon discharged from the custody of the penitentiary authorities, and Haddox, the warden, appealed to this court.

We have stated above the grounds upon which Richardson alleges that his imprisonment was illegal, and have also given in full the return of the warden, together with the order of the court that the points involved might clearly appear. The assignment of errors relate in substance to two propositions: (1) That the court erred in holding that it was illegal in this case to confine in the penitentiary, solely for the nonpayment of the fine, and that therefore the petitioner, Richardson, was unlawfully restrained of his liberty; and (2) that the court erred in holding substantially that the judgment rendered by the Supreme Court of the District of Columbia was null and void and beyond the power and jurisdiction of the said court; that it

deprived the petitioner of his liberty without due process of law, because in effect the court had imposed the maximum term of imprisonment in its sentence, and had added thereto an additional imprisonment, at labor, for the nonpayment of the fine.

Although the second grounds assigned as error were set up by Richardson in his petition, the court seems not to have considered them in rendering its decision. We do not therefore deem it necessary to pass upon the validity of the sentence entered by the Supreme Court of the District of Columbia in this case. We may say, however, that section 5440, Rev. St., as amended by Act May 17, 1879, c. 8, 21 Stat. 4, under which Richardson was convicted, provides for punishment by penalty of not more than $10,000, or by imprisonment for not more than two years, or to both fine and imprisonment in the discretion of the court. The court imposed the maximum of imprisonment and fine in Richardson's case. We shall, therefore, leave this assignment of error without further discussion, for we do not understand that the question it presents is before us on this appeal.

The important question, and the one which arises upon the order of the Circuit Court, is involved in the first assignment of error: Was Richardson, after the expiration of the term of imprisonment, unlawfully detained by the prison authorities at Moundsville? In case of sentence of a person for the violation of the criminal laws of the United States to a term of imprisonment, together with payment of a fine, at the end of the term of imprisonment the law provides two methods of release from prison. The one is to pay the fine imposed; the other, in case of a poor convict unable to pay the fine, that he remain in prison for the space of 30 days solely for the nonpayment of the fine, and then upon application to a United States commissioner take the insolvent oath provided by law. The latter relief is obtained under the provision of section 5296 or section 1042, Rev. St. U. S.

Section 5296 reads as follows:

"When a poor convict, sentenced by any court of the United States to be imprisoned and pay a fine, or fine and cost, has been confined in prison thirty days, solely for the non-payment of such fine, or fine and costs, such convict may make application in writing to any commissioner of the United States court in the district where he is imprisoned setting forth his inability to pay such fine, or fine and costs, and after notice to the district attorney of the United States, who may appear, offer evidence, and be heard, the commissioner shall proceed to hear and determine the matter. If on examination it shall appear to him that such convict is unable to pay such fine, or fine and costs, and that he has not any property exceeding twenty dollars in value, except such as is by law exempt from being taken on execution for debt, the commissioner shall administer to him the following oath: 'I do solemnly swear that I have not any property, real or personal, to the amount of twenty dollars, except such as is by law exempt from being taken on civil process for debt by the laws of (naming the state where oath is administered;) and that I have no property in any way conveyed or concealed, or in any way disposed of, for my future use or benefit. So help me God.' Upon taking such oath such convict shall be discharged; and the commissioner shall give to the keeper of the jail a certificate setting forth the facts."

Section 1042 of the Revised Statutes, the other section which is referred to, contains practically the same provisions as section 5296, though in the first paragraph there is a somewhat different arrangement of the language employed.

The Circuit Court, as will be seen, was of the opinion that Richardson could not be legally detained in the prison at Moundsville after the expiration of the specific term of imprisonment, and this opinion was based on the ground that the statute did not authorize imprisonment in a penitentiary for the nonpayment of a fine. We cannot concur in this interpretation of the law. The sections which we are considering are not criminal statutes, and therefore the courts are not confined in passing upon them to a strict rule of construction. These, statutes are administrative in their character and purposes; they do not create any criminal offense, nor empower the courts to inflict punishment. They simply provide a method by which a convict who is in prison for the nonpayment of a fine or costs, or both fine and costs, and who, on account of his poverty, cannot pay, may be released. The power of a court of criminal jurisdiction to order a convicted person into custody as a means of compelling the payment of a fine imposed by the court as punishment is inherent, otherwise the courts would be impotent to enforce such punishment. It is true that in the ordinary administration of the criminal laws, both of the United States and of the several states, no person sentenced to pay a fine, or fine and costs without imprisonment, would in default of payment be imprisoned in a penitentiary. In the federal courts, when a fine is imposed or a convicted person adjudged to pay cost or both fine and costs without imprisonment, it is the usual and orderly course for the court to commit the person required to pay the fine, or fine and costs, to the custody of the marshal until the same is paid, and the marshal retains the custody by placing the person in the prison or jail, which is being used in connection with the court, there to remain until the fine, or the fine and costs, or both as the case may be, are paid, or until the person seeks advantage of the sections of the law to which we have above referred.

The proceedings in the state courts in similar cases are practically the same, at least, to the extent that the court orders a person sentenced to pay fine, or fine and costs, into the custody of the sheriff or to prison until the judgment of the court is complied with. This comment on the practice of the courts may be something of a digression, but we are led to it by reason of the fact that, in support of the decision of the Circuit Court, stress is laid upon the word "jail," which is used in the last clause both of section 1042 and of section 5296, and from the use of this word it is argued that the law contemplates that no person can be imprisoned for the nonpayment of a fine or costs, or both fine and costs, elsewhere than in a jail.

It will be observed that the last clause of the statute is not in any sense a part of its substance; for it only provides that after the convict has remained in the prison for the 30 days for the nonpayment of fine or costs, or fine and costs, he may make the application to take the oath of insolvency, and if upon the hearing the commissioner administers the oath the convict is discharged. That is the end of the proceeding so far as the convict is concerned. The statute then provides that the commissioner shall certify the facts to the keeper of the jail, intending thereby, no doubt, simply to give notice to the jailer that the prisoner had been discharged, in order that the former might enter the facts upon the roll of the prison: and in this connection,

construing the statutes according to what we must conclude was the intention of Congress, we think it entirely consistent with their meaning and purpose to hold that this clause also contemplates that if the poor convict was in a prison, other than a jail, the certificate should be furnished to the authorities of that prison. The word "prison" used in the body of the statutes is descriptive of the place of confinement in which the poor convict is held, whether it be a jail or a penitentiary, and to say that because Congress in the last clause of the statute, which, as we have before said, is unimportant as affecting the rights of the convict, has used the word "jail," that that is to be construed in a strict sense and control the whole operation of the statute, would, as we think, ignore the substance and stick in the letter of the law. "Qui hæret in litera hæret in cortice."

So far as we are advised, the practice has been uniform in the execution of the judgments of the courts of the United States that where a person is sentenced to a term of imprisonment, and also to pay a fine or cost, or fine and costs, that at the expiration of the term of imprisonment, and in default of the payment of the fine or cost, or the fine and costs, according to the terms of the sentence, such person is required to remain in the prison in which he has undergone his imprisonment for the time required by the statutes before he can take the insolvent oath, and this practice is in accordance with our understanding of the law. We cannot agree with the view that where a sentence of imprisonment, coupled with a fine, is adjudged by a court of the United States, the person sentenced is to serve the term of imprisonment in one prison, and if that should be a penitentiary, then to be transferred to some other prison, to remain the time required before the insolvent oath can be taken, or, as in the case before us, discharged altogether at the end of the term of imprisonment.

A case involving the same principle as that we are considering arose in the state of New York, and the Appellate Division of the Supreme Court of that state, in People v. Sage, 13 App. Div. 135, 43 N. Y. Supp. 372, 375, rendered a decision which so aptly expresses our views that we quote from it as follows:

"As already stated, I can find no provision of law before the Code of Criminal Procedure prescribing where imprisonment for default in the payment of fines, either in the case of felonies or misdemeanors, should be ordered. As far as I have been able to ascertain, the practice has been uniform, where there has been imposed both imprisonment and fine, to direct the imprisonment, in default of the payment of the fine, to continue in the same prison; that is to say, where the imprisonment was in the state prison, the defendant was directed to stand committed in that prison. It would plainly be unfair to commit to the state prison a defendant convicted of a misdemeanor, and subject him to the disgrace of association with felons and hardened criminals, for whose punishment state prisons are instituted; but there is no impropriety in directing that a felon properly incarcerated in a state prison for his offense shall serve out his fine in the same institution. As there is nothing unreasonable or unfair in continuing the imprisonment of felons in state prison, and there is no express statutory enactment on the subject, I think we should not disturb a practice which has so long prevailed."

It is our opinion that at the expiration of the term of imprisonment to which Richardson was sentenced, and in default of payment of the fine, if it be true that he was unable to pay it, the law required that he remain in the prison at Moundsville, where he had served

his term, for 30 days, at the end of which time he could have made application to take the insolvent oath as provided by the law and be discharged.

The order of the Circuit Court, therefore, upon the writ of habeas corpus discharging the petitioner, Richardson, is reversed, and we further hold, in accordance with this decision, that, if the authorities of the United States so elect, it is within their power to retake Richardson and return him to the prison at Moundsville, there to remain until such time as he can be lawfully discharged.

Reversed.