Appellant was indicted by the grand jury of Jefferson County, Alabama, for possession of 89.4 grams of marijuana and possession of 250 tablets of methaqualone, a controlled substance. Appellant was represented by retained counsel and waived trial by jury. He was tried and found guilty by the court and sentenced to three years imprisonment in the penitentiary.
On October 23, 1979, Officer James L. Sims of the City of Birmingham Police Department obtained a search warrant for the residence located at 921 Shades Crest Road in Jefferson County, Alabama. The pertinent part of the affidavit which was the basis of the search warrant reads as follows:
 ". . within the past 48 hours I have talked to a confidential, reliable informant who has given information over the past two years which has proven to be true and correct and which has led to narcotics cases and convictions. Said informant stated to me that he had been present at 921 Shades Crest Road, Jefferson County, Alabama, the residence of Frank Baty, within the past 24 hours and while present at said address, he observed a quantity of marijuana being kept and sold by Frank Baty. Said informant is familiar with the appearance of marijuana and has proven his familiarity to my satisfaction.
 "Based on the above reasons, I have probable cause to believe and do believe that marijuana is presently kept at 921 Shades Crest Road, Jefferson County, Alabama, in violation of the Alabama Uniform Controlled Substances Act."
On October 23, 1979, Officer Sims, along with Sergeant Howard Brooks of the Jefferson County Sheriff's Department, went to 921 Shades Crest Road in Jefferson County, Alabama, at approximately 11:00 a.m. to execute the search warrant. They knocked on the door which was opened by someone inside. Officer Sims asked for Frank and then entered the house. Appellant was in the bathroom shaving at that time. Three other people were in the living room.
Officer Sims and Sergeant Brooks conducted the search of the house, which was a two bedroom house. In one of the bedrooms Sergeant Brooks found two hundred fifty (250) tablets lying on a dresser which he immediately identified as "qualudes." Seconds later a white plastic bag which contained 89.4 grams of what was later identified as marijuana was found on the dresser. *Page 310 
Appellant filed a motion to suppress the evidence found in the search. Just prior to the trial a hearing was held on the motion to suppress. Officer Sims was the only person to testify. The motion to suppress was denied.
Appellant contends that the motion to suppress should have been granted because the information received from the informant that was used in the affidavit was not "fresh." This contention brings into issue whether the issuing officer of the search warrant had sufficient probable cause to believe that the contraband was where the informant stated it was.
Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723
sets forth a two "prong" test to determine whether the issuing authority of a search warrant had sufficient probable cause to issue the search warrant. Aguilar v. Texas, 378 U.S. 108,84 S.Ct. 1509, 12 L.Ed.2d 723. One of these "prongs" is that the issuing authority of the search warrant must be informed of the underlying circumstances from which the affiant concluded that the informant is a credible person or his information reliable. Appellant does not contend on appeal that this "prong" of the"Aguilar" test was not met.
The affidavit by Officer Sims states that the informant had given him true and correct information over the past two years which led to convictions in narcotics cases. Officer Sims testified on voir dire that the informant had during the past five or six years given him information which led to five convictions of drug offenders. In addition to this Officer Sims testified that the informant had given other officers information on so many occasions that he could not guess how many times. The information contained in the affidavit was sufficient to authorize the issuing authority to conclude that the informant was reliable.
The next "prong" of the "Aguilar" test is that the issuing authority of the search warrant be informed of the underlying circumstances from which the informant concluded that the items to be seized were where he claimed they were. One of the underlying circumstances which should be examined by the issuing authority is whether the information provided by the informant is fresh as opposed to being remote. Davis v. State,286 Ala. 117, 237 So.2d 640; Mitchum v. State, Ala.Cr.App.,384 So.2d 1193.
In the case at bar, Officer Sims stated in the affidavit that the informant had been to the residence within twenty-four (24) hours before talking to him. Officer Sims also stated in the affidavit that he had talked to the informant within the past forty-eight (48) hours. On voir dire Officer Sims testified that at most only seventy-two (72) hours had elapsed between the time he received the information and the issuance of the search warrant.
In a similar case to the one at bar an affidavit which stated informant had been at a residence "within the last week" was held not to be too remote to provide sufficient probable cause to issue a search warrant. Mitchum v. State, Ala.Cr.App.,384 So.2d 1193, cert. denied 384 So.2d 1205 (Ala. 1980). Under the facts and circumstances of this case the information was sufficiently "fresh" for the issuing authority to conclude that the contraband was where the informant stated it was.
Appellant next contends that it was error to overrule the motion to suppress the evidence of the tablets found in the bedroom because the affidavit on which the search warrant was based mentioned only marijuana. Having found that the officers were acting under a valid search warrant, they had the right to make a thorough search of the rooms in appellant's house.Sheppard v. State, 49 Ala. App. 674, 275 So.2d 353; Lucy v.State, 46 Ala. App. 484, 243 So.2d 756. "If during a lawful search under a warrant the police, searching in the manner authorized, find evidence of another offense not related to the crime for which the warrant was issued, it may nevertheless be lawfully seized." Sheppard v. State, supra. *Page 311 
As stated in Dannelley v. State, Ala.Cr.App., 397 So.2d 555, released February 24, 1981, cert. denied, Ala., 397 So.2d 577, May 1, 1981:
 "Seizable items which inadvertently come into view of the officer lawfully searching in connection with another crime, or who otherwise has a right to be where he is, may be retained and used in prosecution of the crime to which they relate if the officer is already in the constitutionally protected area. Sheppard v. State, 49 Ala. App. 674, 275 So.2d 353; Lucy v. State, 46 Ala. App. 484, 243 So.2d 756; Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726."
In the case at bar, Officer Sims and Sergeant Brooks were searching appellant's residence under a valid search warrant. Officer Brooks was searching a bedroom when he found a number of white tablets, with a single score across them and "Lemmon 714" written on the back. The tablets along with a bag of marijuana were lying in plain view on top of a dresser in the bedroom. Upon discovery of the tablets Sergeant Brooks exclaimed, "Look here what I've got, I found some Qualudes."
The tablets found by Sergeant Brooks were found during the proper execution of a valid search warrant. The tablets' apparent criminal quality was obvious to Sergeant Brooks as can be seen from his immediate exclamation identifying the tablets. Under these circumstances the tablets were admissible as evidence of the crime for which appellant was convicted. SeeBrantley v. State, 294 Ala. 344, 317 So.2d 345.
Appellant made a motion to exclude the State's evidence which was denied. Appellant also moved the court for a new trial which was also denied. Appellant claims the denial of his motions was in error because the state failed to prove appellant's knowledge of the presence of the controlled substances in the house.
In the prosecution for the possession of illegal drugs there must be evidence from which the trier of fact may conclude beyond a reasonable doubt that the accused knew of the presence of the drugs. Such guilty knowledge may, however, be established by circumstantial evidence. Parks v. State,46 Ala. App. 722, 248 So.2d 761; Knox v. State, 50 Ala. App. 494,280 So.2d 200; Daniels v. State, 49 Ala. App. 654,275 So.2d 169; Fields v. State, Ala.Cr.App., 333 So.2d 861; New v. State, Ala.Cr.App., 337 So.2d 1355; Walker v. State, Ala.Cr.App.,356 So.2d 674, certiorari denied, Ala., 356 So.2d 677.
As stated in Walker v. State, supra, at 676:
 "Because the element of knowledge is seldom susceptible to direct proof, it may be proved by evidence of acts or conduct of the accused from which it may fairly be inferred that he knew of the existence of the narcotics at the place where they were found. See authorities cited at 28 C.J.S.Supp. Drugs Narcotics p. 300, fn. 87.
 "`The requisite knowledge may also be proved by the physical appearance of the accused, and his declarations, or admissions, and contradictory statements, and explanations made by him.'
"28 C.J.S.Supp. § 204."
In the case at bar Officer Sims and Sergeant Brooks, upon entering the residence, found appellant shaving in the bathroom clothed only in a pair of pants. He stated he was getting ready to go to court. When asked for identification appellant went to the bedroom in which the tablets of methaqualone and marijuana were found and got his billfold which contained his identification. After being arrested appellant dressed himself with clothes from that same bedroom.
Officer Sims testified that he had known appellant for four years. He testified that, during the six months prior to the search he had seen appellant go in and out of the house. He testified that the house that was searched was the residence of appellant. Appellant, himself, after being arrested, jokingly offered to sell the house to Officer Sims. *Page 312 
During the search of the house the marijuana and tablets of methaqualone were found in plain view on the dresser in the bedroom which contained appellant's billfold and clothes. Under the circumstances there was sufficient evidence to show the appellant had control of the premises and knew of the existence of the drugs.
While it is true that three other people were in the living room, there was no evidence to show that any of them resided there or that they had any connection with the drugs seized in the bedroom. In any event their presence has no bearing on the issue of possession since possession of illegal drugs is susceptible of joint commission and the guilt of the accused does not necessarily depend upon proof of his ownership of the drugs. Radke v. State, 292 Ala. 290, 293 So.2d 314.
Appellant did not testify on the motion to suppress or on the trial in chief. He offered no evidence in his behalf.
Under the circumstances there was sufficient evidence for the trial court to conclude that appellant had control of the premises, knew that the drugs were there, and, therefore, had possession of them. The evidence presented in this case was sufficient to sustain the conviction and the trial court did not commit error in overruling appellant's motion to exclude the State's evidence nor in overruling the motion for a new trial.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.